NEW-YORK
Nov. 1822.

The People
*vs.*
R. Kirby.

---

## The People *vs.* Redmond Kirby.  *Petit Larceny.*

REDMOND KIRBY, a young man, apparently about twenty-five years of age, was charged with stealing, from Mathew Austin, a $5 bank note, on the 23d day of October, 1822.

When the charge is proved, good character does not avail.

The facts were, that Kirby was in Austin's employ, working in the new houses in Broadway, nearly opposite the Circus. He had worked with him for some time. On the evening of the 23d, Austin, Kirby, and Mr. Meeks, went to Mr. Smith's, who keeps a porter-house, for the purpose of " taking a glass," and to pay Kirby half-a-dollar. Mr. Austin took out his pocket book, in which were fifty dollars, in five dollar notes; he took out the roll of bills, and handed one of them to Smith, to get change, in order to pay Kirby fifty cents, and laid the roll upon the pocket-book ; Kirby at this moment reached his hand secretly to the bills, and took one off the roll, and put it into his pocket. Mr. Austin gave him the half-dollar, and put his

money into his pocket, and all of them went to Mr. Lutby's. As they were going Mr. Meeks asked him if he was not robbed, telling him to count over his money ; and upon examining it he missed five dollars. Meeks now told him he saw Kirby take it when they were in at Smith's. Kirby was challenged by the prosecutor and Meeks with stealing the money : he denied it and expressed a willingness to be searched, telling them if they did not prosecute him, he would prosecute them ; they then took him to the police, where he was examined and committed. The facts being made out by the prosecutor and Mr. Meeks, *Maxwell District Attorney*, rested the prosecution.

*Wilson*, for the prisoner.

Barnet Gunn was examined for the prisoner, who testified, that he worked at the same house with the prosecutor, and that he was sometimes in habits of intoxication ; and that upon one Saturday night in particular, he was so much so, that he was obliged to give part of the money to Kirby, to pay the hands. This testimony was rebutted by the prosecution. It was proved that Austin and Meeks were men of good characters, and that on the evening mentioned, were not intoxicated. The prisoner's counsel called a great number of witnesses, who testified that he was a man of good character, and had never been suspected of committing any crime.

*By the Court.*—" Mr. Meeks swears that he saw the " prisoner take the note complained of in the indictment; " he swears that he cannot be mistaken. *In cases where* " *there is doubt, character is essential, but where the charge* " *is proved, it cannot avail.*"

NOTE.—Character formerly was only allowed to be given in evidence in capital cases : it was allowed only in *favorem vita* ; but the rule has been extended to embrace all misdemeanors : vide the case of

*The margin notes:*
NEW-YORK, Nov. 1822.

The People *vs.* R. Kirby.

Vide Green v. Cornwell. City Hall Rec. vol. i, p. 11.

NEW-YORK.
Nov. 1822,

Benjamin Harris, 32 Car. 2. J. Mackler's case, Commis Oyer and Terminer, Dublin, December, 1799.

In the case of Green v. Cornwell, City-Hall Rec. vol. 1. p. 11. it is decided, " when the feeling and reputation of an honest and upright citizen are involved, his good name will preponderate in favor of his innocence, in a *doubtful* case."

In Freeland's case, ibid, vol. 1. p. 82. it is decided, that " good character " in a clear case of guilt will not avail a prisoner." But it is also decided in the case of Levi James and others, ibid, page 132. that " char-" acter is sufficient to repel the presumption of guilt, in a prosecution " for passing counterfeit bills, where the circumstances are slight on " which the *scienter* is founded."